America v. Portillo Aguilar. We will hear from Ms. Duniker for the appellant first. Good morning, Your Honors, and may it please the Court. May Anne Dunker, Assistant Federal Public Defender, on behalf of the appellant Eduardo Portillo Aguilar, seated with me at council table, is Assistant Federal Public Defender Ian McDonald, who tried the case with me below. In this case, the government failed to present sufficient evidence that the robbery of two private individuals affected interstate commerce within the meaning of the Hobbs Act. We do not dispute that in our circuit the required effect on commerce may be minimal or that the Diaz categories are non-exclusive and may be extended. But this case presents a theory of interstate commerce in an individual Hobbs Act robbery that is materially different from what this court has previously approved. In each of this court's individual victim Hobbs Act cases, the impact on interstate commerce arose from the victim's own commercial activities, assets, or relationship to commerce. Here, by contrast, the government is relying solely on the indirect effect to a non-party and an unrealized future purchase. Unrealized, but they were in the parking lot, six feet away, saying that they were going to go in and patronize the restaurant. Why is that too minimal? It's too minimal because it suffers from the flaw that there's no limiting principle. All of us at all times are potential customers, future customers. At the point that the victims were in the parking lot. But it was a parking lot exclusively for purposes of that restaurant. Correct, Your Honor. And we don't dispute that either. And I think the same problem is present for both lines. Customer status alone lacks a limiting principle. And I think a property line alone is a limiting principle that isn't the right inquiry. Because the inquiry under the Hobbs Act is, what is the effect on commerce? Right, but didn't you have a de minimis? I mean, I think we've said repeatedly that it has to be de minimis, the impact on interstate commerce, right? Agreed, Your Honor. And here you have a situation where we've had multiple cases where if there is an entity that is affected, i.e. closed, which is obviously undisputed that the restaurant was closed for close to two hours, no customers were able to make purchases, no transactions were able to be done, that the restaurant lost money as a result of that. How is that not a de minimis? So even assuming that all of that is true, taking all of that is true. Oh, it is true. Right. The commerce nexus still depends entirely on the consequences to a non-party. And the reason that I think that's important is because once this court approves looking beyond the parties, beyond the victims in the case to third parties, non-parties, then the court is going to have trouble figuring out where the line stops. What if the victim had been the restaurant's owner and obviously the owner wouldn't have been spending money, but then the same follow-on effects happened as happened here? What would your answer be then? I think then that would be a Hobbs Act because at that point there is a clear direct connection between the victim and the robbery and the effect on commerce. I think that's very similar to what happened in Diaz. In that case, the victims were the CEOs of a medical company and they were robbed. The medical company then shut down. And the court there said that what set that case apart is the defendants targeted the individual victims because of their connection to interstate commerce. In other words- What if the perpetrator didn't know that it was the owner? If it just, it happened to be the owner walking into the restaurant, but that wasn't why the defendant targeted them. It's just, they happened to be the person in the parking lot at the time that he was looking for a victim. I think that would still be a Hobbs Act robbery. I think our case law is clear that the subjective intentions of the defendant don't matter. That's not inconsistent with what Diaz said. Diaz said that the role, quote, the role of the Martins with regard to their business, which was directly engaged in interstate commerce was not coincidental. And so even though it was part of the analysis that the defendants targeted the victims because of their connection to commerce, I think it would be sufficient and consistent with the broad reach of the Hobbs Act just to find that there was a connection arising out of the victim connected to commerce. What if it was a, what if it was a waiter rather than the owner of the restaurant? Same answer. I think that would be a Hobbs Act. And, and I think that would be consistent with, um, the line of cases where the defendant goes into the store and robs an employee of the business or causes the employee to take cash out of the register, gray, Gara, Ransfer. And again, I think what sets those cases apart from the facts here is that that connection is just not present. The only connection the victims had to commerce was that of prospective customer. What if they were, what if the victims had been in the restaurant when they got robbed? I think that that would be a closer call, but I think my answer would be not necessarily a Hobbs Act robbery. And again, how would, how would it not be a Hobbs Act robbery if the customer is inside? Again, I do think it would be closer, but I think not necessarily if the victims at the point they're robbed inside the restaurant are still only prospective customers, but if they had a weather connection, what if they had ordered, I think, I think that would be closer because at that point they would, I think be characterized as being engaged in an ongoing transaction with the restaurant at the point where they've ordered, they now owe the business money. I think that would be closer, but in any event, I, the court doesn't have to decide that here because that is not the facts we have here. They were not ordering, they were not inside the facts we have here, which are stipulated is that, uh, customers were impeded from entering and purchasing items and food items and beverages for close to two hours, uh, that the restaurant was closed and that the restaurant lost money. I agree, Your Honor. And I don't think I need to dispute any of those facts for Your Honor to find a new favor. And the reason for that again is the court has to set a limiting principle. I mean, that's what I'm saying. In Gray, Judge Marcus wrote, the pop, the proper inquiry remains whether the conduct had a minimal effect on commerce is of no moment to the analysis where the effect is characterized as direct or indirect. If the defendant's conduct had a minimal effect on commerce, nothing more is required. So, I mean, I, I understand that your, your concept is, is that it has to be a, you know, direct like an op to the subject. It has to be the effect on that particular subject. But I mean, the language in all these cases from the circuit is, is very, very broad with the Hobbs Act robbery. I don't think my point is that it has to be direct. I think my point is that if the court's going to rely on indirect effects, which it absolutely is permitted to, then it shouldn't arise out of a non-party. And the reason I say that is not because our cases specifically have said that as a holding, and I don't mean to propose that, but looking at the reasoning in our individual victim cases, I think that's what we see. In Diaz, in Smith, in Verbitskaya, in each of those cases, there was an indirect effect on the individual victims, either business or activities in interstate commerce. But the reason that that was appropriate is because the victim was directly engaged in commerce. And so although it was an indirect effect, it wasn't coincidental. It wasn't even really that attenuated compared to what we have here. I think the relationship between a prospective customer and a business, it's just too indirect, too attenuated to extend Diaz. How can it be so indirect when, again, they're on the property? The parking lot is only for this business. It would be one thing if they were in a shopping center. They're planning to go shopping. That becomes a little less connected. But here, it seems pretty clear where they were, where they were going, and what they were planning to do. And then you have the restaurant closure. And I recognize that that in and of itself might not be dispositive, but you have a robbery on the property, and then the restaurant has to shut down. They lost business. How is that not a direct impact? I think I take your question to be, why can't these two things taken together be enough? And my answer to that is, two insufficient theories that suffer from the same problem, where is the limiting principle, cannot create a sufficient one taken together. And the reason why I think a limiting principle needs to set a line with not extending this beyond the victim to non-parties is because otherwise, there's no telling where it could stop. What is the limiting principle you're proposing? The narrowest version would be no Hobbs Act robbery solely based on indirect effects to a third party or an unrealized future purchase. And I think more broadly would be for an individual Hobbs Act robbery, the effect on commerce must arise from the victim's own commercial transaction, assets, or connection to interstate commerce. Doesn't commerce take two parties, right? So the restaurant here is certainly a party in commerce, but if no one was coming in the restaurant, then it would soon be out of commerce because they would have no money and no customers. So why can't we take account of both sides of the commerce equation? I'm sorry, can you repeat your question, your honor? It's clear that you think that the restaurant is engaged in commerce, right? But the restaurant has to have someone on the other side of the equation in order to carry out commerce. So why can't we take account of both sides of that commercial equation? I see. Again, I think the problem is that it would lack a limiting principle because all of us at all times are a potential customer, are potentially a future customer, who if we're robbed are going to make an unrealized purchase. That assumes the limiting principle is that you are a customer that's going to be engaging in commerce transaction with that restaurant. If you had already engaged in commerce with that restaurant and you had left and you were now in your car and now you were exiting onto the highway and you got robbed at that moment, I'm not sure that that would be a Hobbs Act robbery. I think it could if the government proposes the wallet was stolen and therefore the victim who had intended to go to Publix that day and buy groceries could no longer do so. Did you not hear my hypothetical? My hypothetical is you already purchased, you exited the restaurant, you entered your car, you got in the parking lot and you drove and now you're entering the highway like US1. And then all of a sudden you get robbed. Right. That's not Hobbs Act robbery because there is nothing that is impacting interstate commerce. You already conducted your transaction with the restaurant. Right. I understand. That's the limiting principle, correct? I think it is. And I think under that limiting principle, still here on our facts, there would be no Hobbs Act robbery because there's still no transaction. They had not even started it at most. They were just intending to. But the impact, which only has to be de minimis, it impacted the restaurant because as a result of the robbery, which was in the parking lot, which only pertained to the restaurant, and it was the only way in and out for customers, it was impeded because for two hours, customers were not able to come in and out of that restaurant as a result of that robbery. I understand, Your Honor. And my answer to that, again, is if that's the line the court wants to draw here, there was no transaction and a potential purchase, a future purchase is not enough because at that point it could be applied endlessly. Thank you. I think we've got your argument. Thank you. You'll still have your reserved time. Mr. Chen. Good morning and may it please the court. Alan Chen for the United States. I'll start with just two points of agreement between my friend and I. This court has repeatedly reaffirmed that all that is necessary for Hobbs Act robbery is a minimal effect on commerce, an effect that can be either direct or indirect. And the robbery at issue in this case had that effect in multiple ways, as I think Judge Lagoa has already amply summarized. Two victims here were robbed on the premises of the restaurant. They were in the exclusive private parking lot of the restaurant just six feet, two yards away from the entrance. They were planning to eat at the restaurant that day but were prevented from doing so because of the robbery. What if they were in the parking lot but they were actually planning on sneaking over to the restaurant next door that didn't have its own parking lot and they were hoping they wouldn't get in trouble for that? And then they were robbed and the commerce effects on the restaurant where they were not planning to eat were the same, right? The restaurant still had to shut down, the customers left, all of that. Would that be a Hobbs Act robbery? I think that would be just a more difficult case for the government. I guess in a hypothetical you could be separating their status as immediate prospective customers. That would apply to one business but the sort of disruptive effects would apply to the other. I think to be frank, I think the government would probably still take a stab at that case but it's certainly not the case you have presented here where the collection of all of these effects, the robbery on the doorstep, the deprivation of the business transaction that those two customers were about to engage in and the resulting disruption from both the robbery, you have the patrons and the wait staff rushing outside to see what's going on and provide assistance. I think the facts of the case I could see are more favorable towards the government but my concern is what is the limiting principle because it does appear that if we adopt the government's application or interpretation, it seems like we're federalizing all robberies. I would resist that interpretation. I mean you have a pretty well circumscribed set of facts here. We're not asking this court to go any further than for example it did in Gray or Guerra. At most, you know, a half step. I guess, how many steps? More steps. I mean most of those cases involve actual business owners where there's no question that commerce has happened or is about to happen or was impeded here other than the fact that they're on the property and I think Judge Grant's hypo suggests that we don't know where they might have gone. We don't know until they do it. So how far in the future are we supposed to guess or hypothesize to support your conviction here? I understand. Just quickly, I would just reemphasize that they've stipulated that Mr. Portillo-Aguilar has stipulated below that these two victims were going to purchase at this restaurant. So in this case, as it turns out, we do know. But I think Judge Lagoa nailed it when she said that there are limiting principles here. I mean I think the hypothetical that Judge Lagoa raised reminds me honestly of the Eighth Circuit's decision in Quigley which is cited by my friends. There, as the panel certainly remembers, the victims had already completed a purchase. They had already phoned in a purchase to a liquor store and were on the way to the liquor store to pick up their purchase. And importantly, the court noted on page 911 of that decision that there was no evidence that they planned to do anything else at the store besides pick up what they had already purchased. There was no evidence they intended to engage in a further transaction. The Eighth Circuit held that that wasn't enough of an effect on commerce. I think that is pretty consonant with Judge Lagoa's example of someone who had just finished a transaction and left the restaurant and got on the highway, for example. What if this was a set of fast food restaurants and there were three fast food restaurants right near the parking lot and the pair weren't sure which one they were going to go to, but they were definitely going to go eat at one of them? Is the potential effect on those three businesses enough? And we're also assuming they all share one parking lot and they're all pretty close to each other and disruptive effects happen. Again, I think that's a little further down the spectrum than this case, but it's similar enough that I expect, yes, the government would argue that the Commerce Clause, that there was the minimal effects as required by the Commerce Clause. I mean, I guess the issue really is that the limiting principle here is guided by our own precedential language, which is that in our circuit we require it to be de minimis as opposed to substantial, the impact on commerce, correct? Yes, I think that's right. So just a few more points. My friend argued that the victim's status as prospective customers in this case, I guess categorically can never count if they're robbed for Hobbs Act robbery. I think that's just a distinction that's not found anywhere in either this court's case law or the text of the statute. The Hobbs Act robbery statute applies to any robbery of an individual affecting interstate commerce. It makes no distinction between the status of the individual at the time they were robbed. Frankly, it makes no distinction between robberies of businesses and individuals. And given that we're all consumers, then again, at what point does the commerce connection become less than de minimis? I think we would not be able to rely on just the highly abstract speculative proposition that all people are prospective future customers of some kind of business at all times in their lives. That kind of effect is too indirect, too speculative. It reminds me of, I guess, the Fifth Circuit's decision in Collins, which this court distinguished in Diaz, where the robbery victim was, I think, like an employee of a company and the robbery at his home would prevent him probably from engaging in activities he needed to do for his employer. That's the kind of thing that I think is a little too far removed. What if that employee had been walking into the place of business? Would that put it within the Hobbs Act rubric? Yes, I think so. I think it would remind me more of this case. Robbery on the premises or immediately next to the premises of his business. But don't you still have to deplete the assets? I mean, under one of the Diaz factors, which is that the crime has to cause the depletion of assets of the entity engaged in interstate commerce? I mean, if they just took the employee's wallet, like in the lobby, going into the building, and that's it, and that's all they did, and the business kept open, would it meet the Diaz factors for a Hobbs Act? I understand. It may not. In that case, of course, the Diaz factors. Isn't that the issue, really, with Hobbs Act, is that it's really a fact-intensive inquiry? Each case requires its own analysis? Precisely. This court has emphasized that this is a highly fact-specific case-by-case inquiry, which makes it a little hard, frankly, for me to stand here and draw very clean lines between here an effect is met and here it isn't. I mean, that's really the issue about the limiting principle, is that it's a fact-intensive inquiry, and so each case is going to require its own analysis. I agree. But then what about the slippery slope? I mean, if we say we move from Hobbs Act cases, for the most part, that have involved business owners, now we're saying non-business owners who say they're going to patronize the business, now, like, the next step is a non-business owner, consumer, who says that they might do something. I think that's the concern, is that, you know, even though it's a case-by-case factual inquiry, the facts can lead to a slippery slope of, again, federalizing all felonies that have that even, you know, tenuous connection. I understand the concern, Judge Abudu. I think my response would be to take that case when it comes. I mean, we're asking the court to do no more than what the Seventh Circuit did in its recent decision in Demas, which we cited in a supplemental letter to this court, where essentially quite similar facts. The robbers there robbed only the customers of the convenience store, but not the employees and not the business itself, and the court relied on, you know, precisely the same effects that we're relying on, that we're asking this court to rely on to determine that there was a minimal effect in that case. You can say that much, and, you know, you don't have to say anything further about a future case that may be a bit more attenuated than this one. So we don't need to disaggregate the factors of whether it's just the fact that they didn't, these customers didn't spend the money, or we don't need to say that it would be enough if only the business had shut down for a few hours. You're saying all the government would ask us to say is, because both, this is Hobbs Act robbery. Oh, that's right, Judge Grant, because of the loss of this prospective transaction, because of the immediate disruptive effects of the robbery, because of the disruptive effects from the first responder response, all of those together we think are enough, and you wouldn't have to get into any questions about, well, what if we only had one or the other in this case? Well, unless the court has any other questions, we're happy to rest on our brief. Thank you. Ms. Demeker. Thank you, Your Honor. I'd like to start with DEMIS that was cited by the government in its supplemental filing. DEMIS explicitly, as we wrote in our response, did not reach the question of whether the individual standing outside the store who were not engaged, as the DEMIS court characterized it, in an ongoing transaction would qualify. So DEMIS, I think our case is much closer to the people who were outside the store than the people who were standing in line, as DEMIS characterized it, presently engaged in an ongoing transaction. Here we don't have any transaction at all, much less an ongoing one. Does that make a difference, though, that the ... I think this parking lot is fenced, correct? Yes, partially fenced, yes. And it's the property of the business. So how can it be determinative whether you're inside the door of a business versus outside the door of the business, if you're certainly within the business's perimeter? And they certainly were within the business's perimeter, undisputed. I think the problem with that, to go back to our earlier discussion, is that a physical line of where the robbery occurred is the wrong inquiry. The inquiry is, did it have an effect on commerce, and is it consistent with the limits of ... But you stipulated that they were going to be prospective customers, that their intention was they parked the car and they were going to go inside the restaurant, correct?  I mean, how is it any different than, let's say they went inside, they ordered, and then they went out to smoke while waiting for the food? And they were robbed there. Would that be a Hobbs Act robbery? I think it would, because at that point they are engaged in an ongoing transaction. At that point they've ordered food, they're waiting to receive what they've paid for, and it hasn't been received by them. So there's still something owed as part of the transaction between the victims and the restaurant. Here, we don't have that at all. We have an unrealized future purchase, and I think that the effects of finding that that would be sufficient- What about all the customers that were inside the restaurant who had ordered, and then business was stopped as a result of the robbery? Again, I don't think that would be sufficient, because it suffers from the same problem. And first I'll say the stipulations don't say that those people never paid their checks. We don't have any evidence of that in the trial record. But even so, prospective customer status, it's just not enough, because it's too attenuated from the effect of the Hobbs Act robbery. I'd also want to dispute the government's characterization that they are not asking this court to go further than our cases. They are. This case is not like Gray, Ransford, Guerra. I think as your honors noted during the questioning, in those cases there was a connection between the victim and the business. They were employees, they were business owners, or the store itself was directly engaged in interstate commerce. This is different. This is not the same as Diaz, as Smith, as Verbitskaya. In each one of those cases, this court found that the victims were directly engaged in interstate commerce and relied upon that connection in finding that any impact to a business, or any asset of a business that was depleted, was sufficient. I think it's one thing if you're talking about robbing the owner of a business in order to get the funds that you know that they have from that business. But I think you correctly said that a waiter being robbed would also qualify, right? But how does that have a direct effect on interstate commerce, more so than robbing a customer? I think it's direct because if a waiter, presumably about to go in and work a shift, or would have worked a shift and now they're not able to, then the restaurant has to call in another person to cover that shift, but perhaps pay them more than they would have in order to make up for the lost work of the person. And I think effectively, if you're employed by the business and you're robbing that person, you're effectively robbing the business as well. And I think we see that in our cases where the defendant goes into the store and directs the store clerk to take money out of the cash register. At that point, even though the victim is the individual, they're effectively depleting the assets of the business. But if it's the individual's money, if the waiter has $20 in their pocket that they did not make from the restaurant, they're just arriving at the restaurant and let's say it's a high school kid and his mom gave him $20 for something, and the robber takes the $20, how is that affecting interstate commerce? I think there still would be a close enough connection between the waiter and between the business, again, because they're employed by it, because they have a connection, because they would have been working there, and presumably the business is losing out by not having that person work a shift because of the robbery. All right, thank you. I see you're running out of time. I had just a quick question about the sentence enhancement. Yes, Your Honor. It seems like we've got a keen statement. The district court said I would have given you these, I think it was 30 months anyway. Can you just tell me what is really the crux of your argument then? Yes, the crux of my argument is that the sentencing commission has now clarified basically that that amendment should not apply to this set of facts in the absence of any physical restraint or physical use of force. Keen supposes that the district court had an understanding of the current law, had an understanding of the guidelines. The sentencing commission has now clarified that the court's interpretation was not true, and I don't think that that was contemplated by Keen such that this court can say that it was harmless. Thank you, and for all those reasons, we would ask this court to reverse the judgment of the district court and remand with instructions to enter a judgment of acquittal or alternatively to remand for resentencing. Thank you.  Thank you.